***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The employee/employer relationship existed at the time of the alleged incident.
2. The employer, Zale Corporation, was insured at the time of the alleged incident by Kemper Insurance Company.
3. The date of the alleged injury was December 10, 2001.
4. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged incident, with the employer employing the requisite number of employees to be bound under the provisions of said act.
5. The average weekly wage of plaintiff is $700.00.
6. The parties stipulate into evidence as Stipulated Exhibit #1, a pre-trial agreement, as modified and initialed by the parties.
7. The parties stipulate into evidence as Stipulated Exhibit #2, plaintiff's medical records.
 RULINGS ON EVIDENTIARY MATTERS
The objections contained in the deposition of Dr. Jeffrey Murray are ruled upon in accordance with the applicable rule of law and the Opinion and Award in this case. In addition, plaintiff made objections at the hearing before the Deputy Commissioner to the document that was subsequently identified as Plaintiff's Exhibit #3 and was introduced by plaintiff at Dr. Murray's deposition. As to this document, all objections are overruled.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the hearing, plaintiff was 42 years old, with a high school education and one year at Durham Tech. Plaintiff was hired to work for defendant-employer as a store manager. As store manager, plaintiff's duties included ordering supplies, scheduling employees as needed, supervising, merchandising, making bank deposits, and handling jewelry and accessories for retail trade. Plaintiff's job as store manager with defendant-employer required a physical demand level of light duty.
2. Plaintiff has provided several conflicting accounts of her alleged incident, in which she contends she hurt her right knee while working for defendant-employer on December 10, 2001.
3. On December 10, 2001, plaintiff presented at Duke Urgent Care, where she was seen by Dr. M. Sherwyn Mouw. Plaintiff reported to Dr. Mouw that she heard a pop as she was bending her knee earlier that day. Dr. Mouw's assessment of plaintiff was for lateral meniscus tear versus lateral collateral ligament injury. Dr. Mouw obtained x-rays of plaintiff's right knee that day, which revealed no evidence of fracture or bony abnormality. Plaintiff did not report on December 10, 2001, that her knee problems were in any way work-related.
4. Plaintiff presented at Triangle Orthopaedic Associates on January 9, 2002, for examination and evaluation by Dr. Jeffrey A. Murray. Plaintiff reported to Dr. Murray that she had injured her knee on December 10, 2001, when she fell and hit her knee on a cement floor. Plaintiff did not report the injury as being work-related. Plaintiff also reported to Dr. Murray that she had no prior history of right knee injuries. Dr. Murray assessed plaintiff with right knee pain of uncertain etiology along with significant difficulty with flexion and extension. He recommended obtaining an MRI for more extensive examination and that plaintiff begin a course of physical therapy. Plaintiff began physical therapy pursuant to Dr. Murray's recommendation; however, plaintiff missed at least ten of her scheduled physical therapy visits.
5. On April 10, 2002, Dr. Murray reviewed the results of plaintiff's MRI and noted evidence of a questionable partial ACL tear, as well as patellar tendinopathy. Dr. Murray noted that the menisci and ligamentus structures were otherwise intact. Dr. Murray also noted that plaintiff's knee had improved and that it was clinically intact. April 10, 2002, was plaintiff's last medical visit with Dr. Murray.
6. Contrary to plaintiff's testimony and her report to Dr. Murray on January 9, 2002, plaintiff does have a history of injury to her right knee. Plaintiff was seen on December 14, 1998, at Duke Family Medicine by Dr. Hershey S. Bell for a right leg injury. On that day, plaintiff reported bumping her right leg into a steel bench while at work, and was diagnosed with a severe contusion of the muscles of the right leg. Plaintiff was also seen at Duke Urgent Care on April 26, 2001, by Dr. W. K. Broyles for complaints of right knee pain. Specifically, plaintiff complained to Dr. Broyles that day that it felt as though her right knee was going to give out.
7. Based on the knowledge of prior knee and leg injuries, Dr. Murray testified at his deposition that he cannot state to a reasonable degree of medical certainty that any current knee condition plaintiff is experiencing is a result of a work-related injury. Rather, Dr. Murray testified that plaintiff's current knee condition could have resulted from plaintiff's prior knee injuries. Additionally, Dr. Murray opined that he is not certain whether plaintiff even suffers a partial ACL tear to this date and, even if she does, such a tear could have resulted from plaintiff's prior two right knee injuries.
8. Following December 10, 2001, plaintiff continued to work for defendant-employer in her capacity as store manager until December 30, 2001. Plaintiff's last date of active work with defendant-employer was December 30, 2001.
9. On January 3, 2002, defendant-employer wrote to plaintiff explaining that she did not qualify for FMLA, but could obtain an approved leave of absence by submitting a leave of absence application and a certification of healthcare provider form. Plaintiff was also advised that because she did not qualify for FMLA, her position might not be held open. Plaintiff failed to provide the requested documents despite the fact that defendant-employer made repeated written requests on February 8 and 26, 2002. By March 13, 2002, more than nine weeks had passed since plaintiff was asked to submit the appropriate leave of absence documents. Because plaintiff failed to provide the requested documents, her more than nine week leave of absence was characterized as unapproved and, therefore, plaintiff was deemed to have voluntarily resigned as of March 13, 2002.
10. Plaintiff did not present any medical evidence that she had been taken out of work as a result of her alleged work-related right knee injury following December 10, 2001.
11. Plaintiff did not present any medical evidence that she was unable to perform her duties as a store manager with defendant-employer, as a result of her alleged work-related right knee injury following December 10, 2001.
12. To the contrary, according to Dr. Murray, plaintiff was capable of doing her store manager job with defendant-employer as of January 9, 2002, on the first visit that he saw and examined plaintiff.
13. Plaintiff's testimony at the hearing was that on December 10, 2001, while performing her work duties with defendant-employer, she had fallen and had hit her knee on the floor. Plaintiff testified that when she fell she was by herself, but that a male employee came by and helped her up. Plaintiff testified that she had forgotten the name of this male employee. Furthermore, plaintiff testified that on the same day as her fall, she called Michele, defendant-employer's district manager, and told her of her fall. Plaintiff failed to provide any witnesses to support or corroborate her testimony of what she alleges happened to her at work on December 10, 2001.
14. The Full Commission, after giving due consideration to plaintiff's testimony and the competent and credible evidence in its entirety, gives greater weight to the evidence of record that does not support or corroborate plaintiff's allegations.
15. Plaintiff has failed to prove by the greater weight of the competent credible evidence and medical testimony of record that she sustained an injury by accident on December 10, 2001, that resulted in any disability or need for medical care.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSION OF LAW
Plaintiff has failed to prove by the greater weight of the competent credible evidence of the record in its entirety that she sustained an injury by accident arising out of and in the course of her employment with defendant-employer on December 10, 2001, that resulted in any disability or need for medical treatment. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim that she sustained a compensable injury by accident on December 10, 2001, with defendant-employer is hereby DENIED.
2. Each party shall bear its own costs.
This 5th day of October 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER